666 So.2d 1147 (1995)
STATE of Louisiana
v.
Edward CHARLES.
No. 95-KA-498.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1995.
*1148 Joseph A. Marino, III, Gretna, for Appellant Edward Charles.
John M. Mamoulides, District Attorney, Leigh Ann Wall, Assistant District Attorney, Gretna, for Appellee State.
Before GAUDIN, and CANNELLA, JJ., and REMY CHIASSON, J. Pro Tem.
CANNELLA, Judge.
Defendant, Edward Charles, appeals the trial court's denial of his motion to suppress evidence. We affirm the conviction and amend the sentence.
On December 9, 1994 defendant was charged by bill of information with possession of cocaine in violation of La.R.S. 40:967(C). He entered a plea of not guilty. On March 13, 1995, following the trial court's denial of his motion to suppress evidence, defendant withdrew his former plea and entered a plea of guilty under La.Code Crim.P. art. 893. Pursuant to State v. Crosby, 338 So.2d 584 (La.1976), he reserved his right to appeal the denial of his motion to suppress. The trial court then sentenced defendant to two years at hard labor, suspended the sentence and placed him on two years' active probation subject to various conditions.[1]

FACTS
At the hearing on the motion to suppress, the State and defendant submitted the police report in lieu of testimony. The report sets out the following.
On November 2, 1994, at approximately 5:20 p.m., an anonymous caller telephoned *1149 the Gretna Police Department and reported that a black male wearing gold jeans was selling rocks of crack cocaine on the corner of Hancock Street and Cook Street. Officer R. Lassiegne and his partner, Officer C. Gurba, proceeded to the location, which is an area known for high street-level narcotics trafficking. While approaching the area in a marked police unit, Officer Lassiegne observed two black males standing on the corner of Hancock and Cook Streets. One of the males, later identified as defendant, was wearing gold jeans and a red shirt. Upon seeing the approaching police car, defendant and the other male quickly entered a nearby supermarket.
The officers parked, exited their vehicle and walked toward the supermarket. As the officers reached the entrance, defendant was leaving. Defendant then looked at the officers and quickly raised his left hand toward his mouth. In order to "prevent the loss of possible evidence," Officer Lassiegne grabbed defendant's arm and a struggle ensued. While struggling with defendant, Officer Lassiegne observed defendant drop two small white rock-like objects to the ground and step on them with his left shoe. After Officer Lassiegne restrained defendant, a field test was performed on the substances and showed a positive reaction for the presence of cocaine. Officer Lassiegne summoned Officer Munch to the scene to assist in gathering the substances from the pavement. Defendant was then arrested.
In ruling on the motion to suppress, the trial judge stated:
[H]aving reviewed the police report with counsel in chambers and the matter being submitted on the basis of the police report, the Court finds that the police acted in response to a notice of criminal activity, that upon investigating that suspected criminal activity, approached the defendant, who was the target of that criminal activity investigation, noticed the defendant make a motion to which the police would interpret as destroying the evidence, seized his hand, and upon that the evidence was dropped to the ground where the police recovered the controlled dangerous substance. This conduct being within the purview of the investigation of the police, the Court finds no conduct that would warrant sustaining a motion to suppress. Therefore, the motion to suppress the evidence is denied.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in denying his motion to suppress physical evidence. Specifically, he argues that the officers involved did not have reasonable suspicion on which to base an investigatory stop of defendant. Alternatively, he asserts that if the officers did have reasonable suspicion to stop him, the grabbing of his arm, which caused him to drop the contraband, constituted a search beyond that which is permissible during an investigatory stop.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as by both state and federal jurisprudence. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984), citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Belton, supra; State v. Rosales, 537 So.2d 850, 853 (La.App. 5th Cir.1989). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. Belton, supra.
The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra. Although flight, nervousness, or a startled look at the sight of a police officer *1150 is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Id. The reputation of an area is another articulable fact upon which a police officer may legitimately rely and which is relevant in a determination of reasonable cause to conduct an investigatory stop. State v. Carver, 531 So.2d 551, 553 n. 2 (La.App. 5th Cir.1988). So-called high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. State v. Burnett, 513 So.2d 391, 393 (La.App. 4th Cir.1987).
In State v. Jernigan, 377 So.2d 1222, 1225 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), the Louisiana Supreme Court held, "[A]n anonymous tip can provide the basis of an investigatory stop. However, the information received from the anonymous tipster must carry enough indicia of reliability, such as specificity of the information and corroboration by independent police work, to justify the stop."
Defendant argues that the anonymous tip was not independently corroborated by the officers, considering that the officers did not observe any conduct which would be indicative of drug trafficking by defendant.
Although defendant was not engaged in any kind of activity indicative of drug trafficking, defendant fit the caller's description of the person selling drugs, he was present in the specified location in an area known for high street-level drug trafficking, he fled into a nearby business when he noticed the approaching police unit and he raised his hand to his mouth when he saw the officers at the entrance of the business. Considering the totality of the circumstances, the officers had reasonable cause to make an investigatory stop of defendant. See State v. Balthazar, 617 So.2d 1319, 1322 (La.App. 3rd Cir.1993), writ denied, 625 So.2d 170 (La.1993), in which the court found that the officers made a valid investigatory stop of the defendant where the officers were given an anonymous tip that someone fitting the general description of the defendant was selling narcotics, the defendant was present in a high crime area, and the defendant started to flee when he noticed the officers' presence.
Defendant further argues that, since Officer Lassiegne did not reasonably believe defendant had a weapon in his hand, the grabbing of his arm exceeded the scope of the permissible search, which is limited to a patdown of the suspect's outer clothing for weapons if the officer reasonably feels he is in physical danger.
Law enforcement officials may adopt reasonable measures to retrieve contraband and prevent its destruction. State v. Wood, 263 So.2d 28, 32 (La.1972); State v. Desmond, 593 So.2d 965, 969 (La.App. 4th Cir.1992), writ denied, 600 So.2d 637 (La. 1992). Whether police action in extracting contraband from the defendant's person is unreasonable depends upon the totality of the circumstances. State v. Winfrey, 359 So.2d 73, 77 (La.1978); State v. Desmond, supra.
When defendant saw the officers at the entrance of the supermarket, he raised his hand toward his mouth and Officer Lassiegne grabbed his arm in order to "prevent the loss of possible evidence." Considering the facts previously known to the officers and because it is common knowledge that narcotics offenders often try to swallow narcotics to defeat the law enforcement process (State v. Wood, supra), Officer Lassiegne had reasonable cause to believe the defendant was attempting to swallow narcotics and his grabbing of defendant's arm was a reasonable measure to prevent their destruction. See State v. Desmond, supra, at 970, where the court found no unreasonable force in an investigatory stop in which the officers grabbed the defendant by the throat, slammed him to the ground, possibly rendering him unconscious, to prevent him from swallowing a packet containing cocaine.
Furthermore, during the ensuing struggle between defendant and Officer Lassiegne, defendant discarded the rocks of crack cocaine. However, at that time there had been no unlawful intrusion by the officers. When evidence is abandoned or otherwise disposed of prior to any unlawful intrusion into a citizen's right to be free from *1151 governmental interference, then such property may be lawfully seized. State v. Belton, supra, at 1199.
Therefore, Officer Lassiegne lawfully seized the cocaine and the trial court did not err in denying the motion to suppress evidence.

ASSIGNMENT OF ERROR NO. 2
Also assigned as error are any and all errors patent on the face of the record.
A review of the record reveals that the transcript, unlike the amended commitment form, fails to show that the trial court gave the defendant credit for time served, although it is mandatory under La.Code Crim.P. art. 880. State v. Sherman, 532 So.2d 908 (La.App. 5th Cir.1988). Therefore, the sentence imposed will be amended to comply with La.Code Crim.P. Art. 880. State v. Sherman, supra.

DECREE
For the foregoing reasons, defendant's conviction is affirmed. His sentence is hereby amended to give him credit toward service of his sentence for time spent in actual custody prior to the imposition of his sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED.
NOTES
[1] As special conditions of defendant's probation, the trial court ordered that the defendant pay a fine of $250 plus court costs, a $20 monthly probationary fee, forfeit his driving privileges for ninety days and submit to drug screening.