718 So.2d 531 (1998)
STATE of Louisiana
v.
Damon J. STAMP.
No. 98-KA-193.
Court of Appeal of Louisiana, Fifth Circuit.
July 28, 1998.
*532 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Assistant District Attorneys, Gretna, for plaintiff-appellee.
Margaret S. Sollars, Thibodaux, for defendant-appellant.
Before GOTHARD and DUFRESNE, JJ., and MURPHY, J. Pro Tem.
MURPHY, Judge Pro Tem.
The defendant, Damon J. Stamp, pled guilty to attempted possession of a firearm by a convicted felon (LSA-R.S. 14:27 and 14:95.1), reserving his right to appeal the trial court's denial of his motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La 1976). In accordance with the terms of the plea agreement, the trial court sentenced the defendant to imprisonment at hard labor for a term of five years without benefit of probation, parole, or suspension of sentence. For the following reasons, we affirm the trial court's denial of the motion to suppress and remand the matter with instructions.
Because the defendant pled guilty, the facts pertinent to our inquiry were derived from the hearing on the motion to suppress. At the hearing, Officer Russell Blanchard of the Gretna Police Department was the sole witness to testify, and he testified to the following facts.
While patrolling on the afternoon of August 13, 1997, Officer Blanchard observed a male subject standing at the corner of Kepler and LeBoeuf drinking a beer in violation of Gretna's ordinance prohibiting the public consumption of alcoholic beverages. Officer Blanchard also noted that the subject was standing next to a red Ford Mustang and conversing with the driver who was later identified as the defendant. When the unknown subject observed Officer Blanchard's police unit, he opened the passenger door apparently to enter the Mustang, which was "getting ready to take off." Officer Blanchard immediately activated his overhead lights and used the police unit's public address system to stop both the vehicle and the subject.
After the Mustang pulled into a nearby parking lot, Officer Blanchard requested the defendant to exit the Mustang "being that he was getting ready to take off in the vehicle with the other subject." Officer Blanchard also instructed the subject who, "did not make it into the vehicle," to step away from the vehicle. Both males complied and approached the officer. Officer Blanchard issued the subject a summons for his violation of the Gretna ordinance, and he "ran both subjects through motions" to determine if there were any outstanding arrest warrants. After being advised by the dispatcher that the defendant was wanted on an outstanding warrant, which had been issued by the Jefferson Parish Sheriff's Office, Officer Blanchard arrested the defendant, advised him of his constitutional rights and placed him in the rear seat of his police unit.
*533 Thereafter, Officer Blanchard asked the defendant if he wanted to have his vehicle secured at the scene or towed, and the defendant indicated that he wanted his vehicle secured[1]. When Officer Blanchard approached the Mustang, he observed through the open window the butt of a .38 caliber handgun between the driver's seat and the center console. After removing the firearm from the vehicle, Officer Blanchard began locking up the vehicle. The defendant's girlfriend then arrived on the scene, and she informed the officer that the vehicle belonged to her brother. Subsequently, Officer Blanchard released the vehicle to her.
In his sole assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. Specifically, he argues that the gun was obtained as the result of an unlawful investigatory stop in that Officer Blanchard did not reasonably suspect him of criminal activity.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by both the federal and state jurisprudence. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984), citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Charles, 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147.
In particular, LSA-C.Cr.P. art. 215.1 provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra.
In the instant case, we find that there was sufficient reasonable cause to stop the defendant considering that the defendant was the driver of the vehicle which was attempting to provide a "getaway" to the subject violating the ordinance.
Having lawfully stopped the defendant, Officer Blanchard was entitled to demand his name. LSA-C.Cr.P. art. 215.1. Furthermore, a computer check revealed that there was an outstanding warrant for the defendant's arrest thereby providing probable cause for the arrest. LSA-C.Cr.P. art. 213(4).
After placing the defendant in the his police unit, Officer Blanchard approached the Mustang to secure it; whereupon, he observed the butt of the gun between the driver's seat and the center console. At that point, the seizure of the gun was lawful because of the plain view exception to the warrant requirement.
In order for evidence to be lawfully seized pursuant to this exception, (1) there must be a prior justification for the intrusion into a protected area; and (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hernandez, 410 So.2d 1381 (La.1982). However, the second requirement of inadvertence is no longer necessary. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).
Considering that Officer Blanchard had lawfully stopped and arrested the defendant and had approached his vehicle to secure it, there was justification for being beside the *534 vehicle. Officer Blanchard then observed the butt of the gun which could reasonably be viewed as evidence incriminating the defendant. See State v. Carey, 568 So.2d 609 (La.App. 4 Cir.1990), reversed on other grounds, 609 So.2d 897 (La.App. 4 Cir.1990).
Accordingly, the trial court did not err in denying the motion to suppress and this assignment is without merit.
In addition to reviewing the assignment of error, we have reviewed the record for errors patent. For the purpose of an error patent review, the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short from indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Orgeron, 620 So.2d 312 (La.App. 5 Cir.1993).
We note that the trial court incorrectly advised the defendant of the prescriptive period for seeking post-conviction as contained in LSA-C.Cr.P. art. 930.8. Prior to imposing sentence, the trial court informed the defendant that he had "three years from today's date to seek post-conviction relief..." However, the correct prescriptive period established by LSA-C.Cr.P. art. 930.8 is "three years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922." Accordingly, we instruct the trial court to send the appropriate written notice of the correct prescriptive period to the defendant within ten days of the rendition of this opinion and to file written proof in the record that he received such notice. See State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346.
Additionally, where the defendant has entered a plea of guilty, the issue of whether the trial court complied with LSA-C.Cr.P. art. 556.1 is now required in an error patent review. LSA-C.Cr.P. art. 556.1, which became effective August 15, 1997[2], reads as follows:
A. In any criminal case, the court shall not accept a plea of guilty or nolo contendere, without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
B. In any criminal case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement, and that the waiver of all constitutional and legal rights are knowingly and intelligently waived.
C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in *535 open court or, on a showing of good cause, in camera, at the time the plea is offered.
D. A verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere.
E. In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.
The comments to the article state that it conforms to the Louisiana Supreme Court's Jackson-Boykin three right articulation rule.[3] Consequently, a review of the court's compliance with LSA-C.Cr.P. art. 556.1 will encompass the issue of whether the defendant was properly "Boykinized."
Regarding the three constitutional right articulation of Boykin, the record reveals that prior to accepting his guilty plea the trial court advised the defendant of his right to trial by jury, his right to confront his accusers and his privilege against self-incrimination and that by pleading guilty he was waiving those rights. The record also contains a waiver of rights form signed by the defendant, his attorney and the judge which indicates that the defendant voluntarily waived his rights by pleading guilty.
Furthermore, in compliance with LSA-C.Cr.P. art. 556.1, the trial court determined that the defendant understood the nature of the offense. The court informed the defendant that he faced a maximum sentence of seven and one-half years at hard labor for a conviction of attempted possession of a firearm by a convicted felon and that in accordance with the plea agreement a sentence of five years at hard labor would be imposed upon acceptance of his plea. The court advised the defendant that he had a right to hire an attorney, and that if he was financially unable to employ an attorney, one would be appointed to represent him. The court ascertained that the defendant was entering his plea voluntarily and that it was not the result of force, intimidation or coercion, and the court determined that the defendant was knowingly and intelligently waiving his constitutional rights.
We note that the trial court failed to fully inform the defendant of the maximum possible penalty, namely that he faced a fine of not more than $2,500. However, we find this omission to be harmless error considering that no fine was imposed by the trial court.
Considering the foregoing colloquy in line with this court's error patent review, we conclude that the trial court adequately complied with the provisions of LSA-C.Cr.P. art. 556.1.
In summary, the trial court's judgment denying the defendant's motion to suppress is affirmed; however, the case is remanded to the trial court for the trial judge to inform the defendant of the notice required by LSA-C.Cr.P. art. 930.8 in accordance with this opinion.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Officer Blanchard testified that a vehicle is "secured" by rolling up the windows and locking the doors.
[2] The defendant entered his guilty plea and was sentenced on January 8, 1998.
[3] In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court emphasized three federal constitutional rights which are waived by a guilty plea, the privilege against self-incrimination, the right to a trial by jury and the right to confront one's accusers. The United States Supreme Court then announced its unwillingness to presume waiver of these rights from a silent record. The Louisiana Supreme Court adopted the Boykin standard in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).