738 So.2d 98 (1999)
STATE of Louisiana
v.
Dwayne MARTIN.
No. 99-KA-123.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*100 Frederick Kroenke, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Appellant Dwayne Martin.
Paul D. Connick, Jr., District Attorney, Rebecca J. BeckerCounsel of Record, Terry Boudreaux, Frank A. Brindisi, Kia Habisreitinger, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
CANNELLA, Judge.
Defendant, Dwayne Martin, appeals from his Crosby[1] plea to possession of cocaine with intent to distribute and his sentence to 5 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
On the evening of October 1, 1997, Agent Michael Crossen and Sergeant Joe Williams of the Jefferson Parish Sheriffs Office were assigned to "Narcotics Overtime Complaint Duty." Officers assigned to this duty respond to citizen complaints in high-crime drug areas. Earlier that morning, Sergeant Williams had received a complaint from a citizen who stated that several black males were dealing narcotics in and around Ivory Nolan's lounge at 1322 Pailet Street in Harvey, a high-crime area. Sergeant Williams, Agent Crossen, and several other officers went to the lounge at approximately 8:30 p.m. that evening to investigate these complaints.
The officers were wearing "Raid" jackets, which are marked "Police," and have police badges on them. Sergeant Williams and Agent Crossen went inside the lounge, while the other officers remained outside. As Agent Crossen entered the lounge, he made "eye contact" with a black male, the defendant, at the bar. The defendant looked at Agent Crossen with a "surprised" or "startled" expression and clenched his hand. Agent Crossen started moving toward the defendant with the purpose of further investigation. As he neared the defendant, he observed the defendant attempting to place his clenched fist into the right pocket of his pants. Agent Crossen then "took control" of the defendant's hand and asked the defendant what was in his hand. The defendant told Agent Crossen that he had crack cocaine in his hand. The defendant opened his closed fist, revealing a clear plastic bag containing several rocks of off-white objects that field-tested positive for the presence of crack cocaine. Agent Crossen arrested the defendant, advised him of his Miranda[2] rights, and took the defendant to the detective bureau, where the defendant gave a statement.
The defendant was charged by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). He was arraigned and pled not guilty. He filed a motion to suppress evidence, confession and identification, which the trial judge denied after a hearing. On the same day, the defendant pled guilty under Crosby, reserving his right to raise on appeal the trial court's denial of his motion to suppress. The trial judge then sentenced the defendant to serve 5 years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant appealed.

ASSIGNMENT OF ERROR NUMBER ONE
In his sole assignment of error, defendant contends that the trial court erred in denying the motion to suppress the evidence. More particularly, defendant contends *101 that the initial investigatory stop was unlawful and therefore, the evidence was illegally seized and should have been suppressed. Defendant first argues that the investigatory stop was illegal because Officer Crossen lacked reasonable suspicion of criminal activity.
The State responds that, under the totality of the circumstances, the officer had reasonable suspicion to justify the investigatory stop. The state further argues that the officer had a reasonable belief that the defendant was armed and dangerous and he was, therefore, justified in "taking control" of the defendant's hand.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, the right of law enforcement officers to stop and interrogate a person reasonably suspected of criminal activity is recognized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence. See: Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Robertson, 97-2960, p. 2 (La.10/20/98), 721 So.2d 1268, 1269; State v. Sanders, 97-892, p. 11 (La. App. 5th Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
The Terry "reasonable suspicion" test has been codified in La.C.Cr.P. art. 215.1, which provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.[3]
Police must have a particularized and objective basis for suspecting criminal activity of the person who has been stopped. State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881. An unparticularized hunch is insufficient to establish reasonable grounds to stop a person. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049; State v. Barney, 97-777, p. 4 (La.App. 5th Cir. 2/25/98), 708 So.2d 1205, 1207.
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer." Huntley, 708 So.2d at 1049. The reputation of a neighborhood as a high-crime area is also an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. State v. Ayche, *102 98-191, p. 9 (La.App. 5th Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061; State v. Miskel, 95-584, p. 5 (La.App. 5th Cir. 1/30/96), 668 So.2d 1299, 1302. A defendant's presence in a high-crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop. State v. Barney, 97-777 (La.App. 5th Cir. 2/25/98), 708 So.2d 1205; State v. Ayche, supra. An officer's experience, his or her knowledge of recent criminal patterns and his or her knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Smith, 96-2161, p. 3 (La.App. 4th Cir. 6/3/98), 715 So.2d 547, 549.
Applying the above jurisprudence to this case, we find that Agent Crossen made a lawful investigatory stop based upon reasonable suspicion of criminal activity.
The stop was made by Agent Crossen, an officer with 9 years of police experience, in a high-crime area. According to Agent Crossen, the Sheriffs Office had received several citizen complaints concerning narcotics transactions in this area and that numerous narcotics undercover purchases, as well as narcotics arrests, had been made in this area. Also, Agent Crossen testified about how defendant had a startled expression at the sight of the identifiable police officers. Agent Crossen explained that as he entered the lounge that night he specifically noted the various patrons' reactions. Agent Crossen made eye contact with the defendant, who returned the gaze with a startled expression, which was described by the officer at the hearing on the motion to suppress as, "Well, his eyeswhen we walked through the door we made eye contact and his eyes were extremely big, large, a very startled look, surprised look." The defendant also clenched his fist at the sight of the officers and, as Agent Crossen approached the defendant, defendant attempted to put his fist into his pocket as if to conceal something or going for something.
Nervousness or suspicious actions upon the approach of police officers, combined with an individual's presence in a high-crime area, is sufficient to justify an investigatory stop. Ayche, 717 So.2d at 1222; Barney, 708 So.2d at 1207.
As the Louisiana Supreme Court stated in State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050, "[w]hether the police had a `minimal level of objective justification' to detain the defendant turns on the totality of all of the circumstances known to the officers." In this case we have the citizen's tip, complaints from citizens in the past, the defendant's presence in an area known to officers for high-crime and narcotics activity, the defendant's startled expression, the closing of his hand when he saw the officers and the defendant's attempt to place his closed hand into his pocket. We find that the combination of all of these circumstances supports a finding of reasonable suspicion to justify the investigatory stop.
However, finding that reasonable suspicion existed does not end the inquiry in this case. The contraband was discovered after Agent Crossen "took control" of defendant's hand as he attempted to place it in his pocket and after Agent Crossen asked defendant what he had in his hand.
The defendant argues that the only justification for this situation is the Terry patdown for weapons to insure the officer's safety. He argues that it does not apply under the circumstances of this case because Agent Crossen did not have a reasonable belief that defendant was armed and dangerous. The State responds that the circumstances warranted a reasonable belief that the defendant was armed and dangerous, justifying Agent Crossen's actions.
When a police officer observes conduct that leads him to reasonably conclude *103 that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, he is, in the course of the investigatory stop, entitled to conduct a carefully limited search to discover weapons. La.C.Cr.P. art. 215.1(B); Terry v. Ohio, 88 S.Ct. at 1884-1885; State v. Sanders, 97-892, p. 11 (La.App. 5th Cir. 3/25/98), 717 So.2d 234, 240; State v. Tolliver, 556 So.2d 166, 169 (La.App. 5th Cir.1990). This limited search, or patdown, is justified under circumstances where a reasonably prudent man would be warranted in the belief that his safety, or that of others, was in danger. State v. Gresham, 97-1158, p. 11 (La.App. 5th Cir. 4/14/98), & 12 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200; State v. Mitchell, 96-999, p. 3 (La. App. 5th Cir. 3/25/97), 692 So.2d 1251, 1252. The officer's belief is not reasonable unless the officer can point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968). The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a "substantial possibility" of danger. State v. Hunter, 375 So.2d 99, 102 (La.1979); Gresham, 712 So.2d at 952.
Under similar circumstances to the instant case, this Court in State v. Johnson, 96-5 (La.App. 5th Cir. 5/15/96), 675 So.2d 1175, held that officers were justified in conducting a patdown after conducting a lawful investigatory stop. The defendants, Johnson and Bennett, and several other individuals were standing in an area known for frequent drug activity. Police were patrolling this area after having received numerous citizen complaints. When officers questioned the group, none of them could provide an explanation for their presence in the area. After seizing cocaine that Johnson had attempted to conceal in his mouth, the officers conducted a patdown of Bennett. When Bennett quickly put his hand down his pants, officers "immobilized" his hands and discovered rocks of crack cocaine inside his hand. Id., at 1177.
This Court held that the patdown of Bennett was justified for the following reasons:
Because dangerous weapons, especially handguns, are tools of the trade in high drug zones, the officers were justified in the pat-down search of Bennett.
Had these incidents not occurred in a high drug area of Marrero, had there not been numerous complaints by citizens and had Johnson and Bennett given a rational reason for their presence at 2800 Mount Kennedy Drive, the motions to suppress would be much more meritorious. It is clear, however, that the officers began their initial questioning within the scope of allowable law, considering the circumstances, and that subsequent conduct by the subjects justified further police action. The trial judge acted properly in denying the motions to suppress.
Id.
Agent Crossen retrieved the rocks of cocaine from the defendant here under similar circumstances from Bennett in Johnson. Agent Crossen stated that when defendant attempted to put his hand in his pocket, he immobilized the hand for "officers' safety." Agent Crossen explained that:
[h]ands are what hurt you in my business, okay, and that's why I took control of his hand, you know, immediately when I proceeded toward him, when I approached him as he was attempting to conceal something in his hand. I controlled the closed-fist hand.
We find that Agent Crossen reacted reasonably when the defendant attempted to place his hand in his pocket. Given the officer's familiarity with the area as one of high-crime and narcotics activity, the citizen's tip concerning narcotics activity in and around the lounge, the complaints *104 from citizens in the recent past, the close association between weapons and narcotics activity, the startled look, the clenched fist and the hand moving toward the pocket, we find that Agent Crossen was justified in immobilizing the defendant's hand for the officers' safety and inquiring as to what was in the closed hand. When the defendant opened his hand and stated that he had crack cocaine in his hand in response to the officer's question, reasonable suspicion ripened into probable cause to arrest the defendant. See La.C.Cr.P. art. 213; State v. Short, 95-742 (La.App. 5th Cir. 1/30/96), 668 So.2d 1240, 1245.
Therefore, based on the foregoing, we find no error in the trial court ruling denying the defendant's motion to suppress. This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for patent errors.
La.C.Cr.P. art. 930.8 instructs the trial judge to inform defendant at the time of sentencing of the prescriptive period for post conviction relief. Here, the sentencing transcript reflects that the trial judge failed to accurately advise defendant of the time limitations that govern filing applications of post-conviction relief, as required by La.C.Cr.P. art. 930.8(C). The trial judge informed defendant that he had "three (3) years to file for post-conviction relief." The defendant should have been specifically advised that he has three years after his judgment of conviction and sentence becomes final within which to apply for post-conviction relief. Therefore, we instruct the trial court to send appropriate written notice to the defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that defendant received the notice. See: State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.
Accordingly, for the reasons set out above, defendant's conviction for possession of cocaine with intent to distribute and his sentence to 5 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence are affirmed. The case is remanded to the district court to provide proof in the record of defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Article 215.1 provides for the temporary questioning of persons in public places as well as for frisks and searches for weapons as follows:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.